## SANDERS VS. SANDERS ET AL.

A Court of Chancery has jurisdiction to enjoin the sale of a slave levied upon under an execution against another person, and to restore the slave to the owner: and the case of *Lovette and wife vs. Longmire,* 14 *Ark.* 339, so far as it holds that a Court of Chancery has no jurisdiction to enjoin the sale of slaves, held as the separate property of the wife, under an execution against the husband, overruled.

*Appeal from Drew Circuit Court in Chancery.*

Hon. THEODORIC F. SORRELLS, Circuit Judge.

YELL, for the appellant.

So far as negro property is concerned, a Court of Chancery will always interfere to prevent a sale or trespass. That a court of equity has jurisdiction in this case; see *Crapster vs. Griffith,* 6 *Har. & John.* 144; *Simms vs. Harrison,* 4 *Leigh.* 346; *Payne vs. Owings,* 4 *Mon.* 80; 3 *Mur. (N. C.) Rep.* 74; 7 *Iredell,* 189; 2 *Strob. Eq. R.* 227; 2 *Hill's Ch. R.* 136, 524; 4 *Geo.* 66; 3 *Ala.* 747; 11 *Smedes & Mar.* 85; 14 *Ib.* 194; *Freeman Ch. R.* 519; 4 *Yerg. R.* 84; *Womack vs. Presley,* 11 *Humph. R.* 478; 6 *Ib.* 55; 2 *Litt. R.* 10; 1 *Spence's Eq.* 615.

HARRISON, for appellee.

As the complainant could have had full and complete relief at law, if entitled to the negro man, she could not apply to a court of equity. *Story's Eq. Pl. sec.* 472; *Lovette and wife vs. Longmire,* 14 *Ark.* 340.

Mr. Justice COMPTON delivered the opinion of the Court.

The only question presented by the record in this case, is one of jurisdiction.

The bill alleges that Sally Sanders, the appellant, is the owner of a negro man, Jerry; and that sundry executions and attachments, issued against one Samuel Sanders, at the suit of the appellees, were levied on the slave, under which he was taken out of their possession, and would be sold to satisfy the debt of the said Samuel, unless by the interposition of a court of equity, the sale should be prevented. The prayer of the bill was for an injunction, and the restoration of the slave to the appellant, etc. On demurrer the bill was dismissed, and Mrs. Sanders brings the case here by appeal.

In *Lovette and wife vs. Longmire*, 14 *Ark.* 339, it was held that a Court of Chancery has no jurisdiction to enjoin the sale of slaves, held as the separate property of the wife, under an execution against the husband.

This decision is relied on as being decisive of the case before us, and it would be so if we were not constrained to overrule so much of it as lays down the rule above stated.

It is undoubtedly established, that a bill in equity will not ordinarily lie for the specific delivery of chattels, or to prevent their sale under execution, because by a suit at law a full compensation may be obtained in damages. But it is equally well established, that there are cases of chattels, in which the remedy at law by damages would be uttterly inadequate, and leave the injured party in a state of irremediable loss. In all such cases a Court of equity will interfere and grant relief. This may occur, where the thing is of a peculiar value and importance, and the loss of it cannot be fully compensated in damages; as in *Duke of Somerset vs. Cookson*, 3 *P. Williams*, 390, where the lord of a manor was entitled to an old altar piece, made of silver, and remarkable for a Greek inscription and dedication to Hercules, and it had been sold by a wrong-doer, it was decreed to be delivered up, as a matter of curious antiquity, which could not be replaced in value. And as in *Fells vs. Read*, 3 *Ves. jr.* 70, which was for the recovery of a silver tobacco box and its envelopes, adorned with engravings of

public transactions and heads of destinguished persons, the bill was held maintainable. This principle has been repeatedly recognized in the English adjudications, where the principal value of the chattel consists in its antiquity; or in its being a family relic, or ornament, or heir-loom; such, for instance as ancient gems, medals and coins; ancient statues and busts; paintings of old and distinguished masters; and even those of a modern date, having a peculiar distinction and value, such as family pictures and portraits, and ornaments, and other things of a kindred nature. *Loyd vs. Loring*, 6 *Ves.* 773, 779; *Lowther vs. Lowther*, 13 *Ves.* 95; *Pearne vs. Lisle, Amb.* 77; *Arundell vs. Phillips*, 10 *Ves.* 140, 8; *Nutbrown vs. Thornton*, 10 *ib.* 163; *Macclesfield vs. Davis*, 3 *Ves. & Bea.* 16, 17, 18. ·

The same principle upon which the cases in England are founded, has been adopted by the courts in this country, and in the southern States, aptly applied to slave property; 2 *Story Eq. sec.* 709. The Supreme Court of Tennessee, in applying this principle in *Henderson vs. Vaux and wife*, 10 *Yerg.* 37, said, "It is but recently in this State, at least, that the peculiar value and character of slave property, and of the relation between master and slave, have been regarded in our courts, in the spirit of a rational and humane philosophy. A few years ago, and any man who had a judgment debtor, might, by virtue of an execution against him, become the owner of a slave of a third party, if he chose in a suit at common law to pay the value, or more than the value. A Court of Chancery, if the owner had there sought to restrain the sale, or recover the possession, closed its doors upon him, with the information that he had a clear and unembarrassed remedy at law. Afterwards it was discovered, as wines, family pictures, plate, and ornamental trees, etc., were protected to the owner in a Court of Chancery against trespass, so might a slave, if a family slave, and a peculiar favorite with his master. But recently, upon grounds far less technical and far higher and sounder, it has been determined that a Court of Chancery will protect the possession and enjoyment of this peculiar property—a property in intellectual

and moral and social qualities—in skill, fidelity and gratitude, as well as in their capacity for labor; and any owner may now say and show to a Court of Chancery, I am master, this is my slave, and he shall retain or recover the possession." In *Randolph vs. Randolph*, 6 *Rand*. 201, decided by the Supreme Court of Virginia, COALTER, J., said: " I understand it to have been the constant course of this court, for a series of years, with a few particular exceptions, that where, on an execution against A, the slaves of B are taken, B is entitled to an injunction; and is not forced to permit the execution to proceed; and resort to his legal remedy for damages. The reason given by the judge, who has preceded me, is a sufficient ground for this decision; but, I think another might well be superadded to it. The master has not only his own *pecuniary interest* to consult, and his own affections and predilections to gratify, in all of which he will be aided by the courts; but, he owes a *duty* to the slave, as well as the slave does to the master, and which he ought to perform; the duty of protection from a violent seizure and sale, which may terminate in the destruction of his happiness, and in breaking asunder all his family ties and connexions."

The same course of decision prevails in Mississippi, as held in *Murphy vs. Clark*, 1 *Smedes & Marshall*, 221; and *Butler vs. Hicks*, 11 *ib.* 78; also in North Carolina, South Carolina, Georgia and Alabama, as in *Williams vs. Howard*, 3 *Mur.* 80; *Bryan & Richardson vs. Robert*, 1 *Strob. Eq. Rep.* 341; *Dudley vs. Mallory*, 4 *Geo.* 52; *Savery vs. Spence*, 13 *Ala.* 561; and we have met with no case, not now overruled, in which a contrary doctrine is laid down.

In some of the cases, as in *Dudley vs. Mallory, supra*, it is held that in order to give the Court of Chancery jurisdiction, it is necessary to charge and prove peculiar circumstances—as that they were family servants, etc., while, in others, as in *Loftin vs. Espy*, 4 *Yerg.* 84; *Henderson vs. Vaux and wife*; *Murphy vs. Clark, and Butler vs. Hicks, supra*, it is decided that from the very nature of the property itself, Chancery is authorized to

interfere; and this, we think, is the better rule. Whether this latter rule is subject to exceptions, to be alleged and proved by the party resisting the jurisdiction, as, for instance, where the slave is held by the owner as mere merchandise—is a question not now before us. (*vide Randolph vs. Randolph, supra.*)

We do not understand, however, that the decision of this court, in *Lovette and wife vs. Longmire*, rests upon the ground that compensation in damages would be an adequate remedy. In that case the Court said, " Admit the slaves to have been the separate property of the complainant (the wife,) that they were family slaves, valued on account of long and faithful servitude, above all reasonable compensation in damages, and that one of them was inhumanly separated from her infant child, still the sale of them by the sheriff, would not deprive Mrs. Lovette of a full and adequate redress at law against the purchaser for possession of the slaves." " By full and adequate redress at law for the possession of the slaves," we suppose was meant the possessory action of replevin. Waiving any discussion, or expression of opinion, as to whether the action of replevin, as regulated by our statute, affects the ancient jurisdiction of a court of equity in such cases; even conceding it to be a full and adequate remedy, it is sufficient to say, it is not full and adequate, but, on the contrary, is uncertain and embarrassed; for when the slave of one is seized and sold under execution for the debt of another, it is in most instances an easy matter for the purchaser to remove the slave beyond the reach of legal process, and even where a contest ensues between the owner and the purchaser, the one aiming to bring replevin, and the other to place the slave beyond the process, the owner, though he use extraordinary diligence, is not unfrequently outstripped, because he knows not whom to sue until after the sale is made—and is driven at last to an action at law sounding in damages—a remedy confessedly inadequate for the loss of his property. Such occurrences are not unknown in this State. The levy is one step towards depriving the owner wrongfully of his slave, and equity will not require him to

wait until another is taken, and his remedy for a specific re-covery rendered uncertain.

The decree must be reversed, and the cause remanded for further proceedings, etc.

Absent, Mr. Justice RECTOR.